UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JUNIOR MELENDEZ, )<br>KEITH JOHNSON, )<br>GRACE KATANA and )<br>SHAUN WALKER )<br>)<br>Defendants. )<br>) | Criminal No. 19-40024-TSH |

**Findings and Order on Defendant Keith Johnson's Motion to Suppress
Evidence and Statements Pursuant to Fed. R. Crim. P. 12(b)(3)(C) (Document #75)**

September 28, 2021

### Introduction

Keith Johnson is charged in a one count indictment with conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. §1951. He has moved to suppress from the introduction into evidence against him at trial, a firearm seized from a motor vehicle he was in, and statements that he made during his arrest and later interrogation. He assigns as reason for the suppression that the search of the motor vehicle was without probable cause, without consent, and that he did not knowingly, intelligently, and voluntarily waive his Miranda rights. For the reasons set forth below, that motion is denied.

### Facts

In July of 2018, Worcester police, and the ATF and the DEA began investigating defendant Junior Melendez and his associates for drug and firearm offenses. Mr. Melendez was known to the police after having been convicted of similar offenses in 2006 for which he served

a lengthy (109 month) sentence. He was identified by the police as the leader of the Massachusetts chapter of the Almighty Vice Lords, a violent street gang. In September of 2018, the authorities obtained a warrant to search Mr. Melendez' Facebook records. In December of 2018, the authorities installed a pole camera in front of 26 Malvern Street in Worcester, Massachusetts which was an address associated with Mr. Melendez. On March of 2019, the government obtained authorization to intercept wire and electronic communications from Mr. Melendez' cell phone.

On March 14th agents begin the interception of communications involving Melendez' telephone. On March 19th agents intercepted a series of phone calls between Melendez and other Defendants that revealed what they believed was the planning of a home invasion and armed robbery. On March 19th at approximately 5:33 PM the defendant Johnson called Melendez (Session 2882) on a call that lasted less than two minutes. Johnson asked to meet with Melendez to "speak about that." Melendez responded that an unknown male was "OT," and that Melendez was "waiting for him to come from out there so he could get all the details broke down." Melendez further said that "he was 100% sure" but that the unknown male "was not coming back for another four," and "we will know everything." Melendez then informed Johnson that he (Johnson) would be accompanied by Walker AKA "Shiz." Johnson told Melendez that he wanted to bring a larger male with him "for more body, just in fact they inside." Melendez assured Johnson that "we will figure it out," and Johnson responded, "I'm going in first, it doesn't even matter."

On March 21, at 12:50 p.m. the Defendant Katana called Melendez (Session 3837). During that one minute, thirty-two second call Katana told Melendez that "yeah, you can do that shit Sunday if anything." Katana asked, "is it a go?" and Melendez responded "yeah, they all lined up."

On March 23, at 9:41 a.m., Melendez called Johnson (Session 5002). During that 43 second call Melendez advised Johnson "tomorrow" and informed Johnson that another male "was out there right now getting the whole layout" and that the intended victim's home is "like a rich, rich ass neighborhood." Johnson asked, "who's in the crib" and Melendez stated that the other male was going to let him know everything.

2

On March 24, at 7:12 p.m. Melendez called Johnson. (Session 5424). In that 55 second phone call Melendez informed Johnson "tonight around two or three in the morning." Johnson confirmed that he would be ready and Melendez told Johnson that he would "scoop" Johnson soon so that they could "get detailed out."

On March 25, at 1:42 a.m. Melendez called Katana (Session 5547 ). During that 47 second phone call Melendez asked, "what was going on?" Katana responded that he was ready whenever the guys were ready, and Katana and Melendez agreed to meet by a barbershop. At 2:04 a.m., Melendez again called Katana (Session 5552). During that two minute and four second phone call the two men discussed "scoping it out." Melendez informed Katana that they would "do it tomorrow" because Melendez wanted to "make sure and get away with it" and that "two or three in the morning was not really the best time to do it."

Melendez made plans to meet Katana at a location in Worcester early in the afternoon of March 25th. At 12:34 p.m. Melendez called Johnson (Session 5737). During that 42 second phone call Melendez asked if Johnson was ready, instructed Johnson to call him when he was ready, and stated that he would pick Johnson up and then go to pick up Walker. Approximately 1:08 p.m. Johnson called Melendez (Session 5760) and during this 42 second phone call Johnson asked, "you got the thing, or I bringing mine?" Melendez said he is finding out right now, but "he might not, he probably not even be there." Melendez told Johnson to "bring one just in case," which Johnson acknowledged.

On March 20th the government had applied for, and received a search warrant for real time cell site location information (CSLI) for Melendez and Johnson's cell phones. They also obtained CSLI for Katana's cell phone without a warrant, obstensibly based upon exigent circumstances. Based on the above phone calls, physical surveillance, and the warranted, and unwarranted CSLI, the police tracked the defendants as they drove 60 miles in two cars from Worcester to Rockland Massachusetts.

Once in the Rockland area agents intercepted the following two calls. At 2:48 p.m. Melendez called Walker (Session 5800). During that one minute and three second phone call Melendez directed Walker "go in Home Depot" while he and Katana went to "see if the whip and shit is there." Melendez told Walker to "get whatever we need," including a pry bar and that Melendez would be right back because he was "only three minutes from this house." At 3:02

p.m. Melendez again called Walker (Session 5807) and during that one minute, 10 second phone call Walker informed Melendez that he was "in the Home Depot parking lot" and that Melendez should make the purchases that they needed because "we can't be showing our face." Walker told Melendez to "grab a crowbar or whatever you think will work." Melendez said there was a car in the driveway and that "we don't think anybody is there anyway but we're not sure."

Based upon these phone calls and the imminence of the home invasion, the ATF and the Massachusetts State Police stopped the defendants in the Rockland Home Depot parking lot. The Defendants, Walker and Johnson occupied a Honda CRV and were ordered out of the vehicle. ATF Agent Bzduch verbally provided Johnson with his Miranda warnings which Johnson acknowledged that he understood. Agent Bzduch asked Johnson if he wanted to talk and Johnson replied that he did because "he wanted to know what was happening." The agent explained to Johnson that they had received information that he was in possession of a firearm and they wanted to make sure that the situation was safe. Johnson told the agents that a woman with whom he shared a child must have filed a false complaint against him. The agents asked Johnson if there were any firearms on his person or in the car and he responded that there were not. After Johnson was placed under arrest he asked one of the troopers, "what was going on?" and then volunteered to the same trooper that his wife had told him "not to go with these guys." The agents obtained permission from defendant Walker to search the vehicle and they found a loaded Smith and Wesson handgun in the glove box, and a 24 inch prybar, and four wheeled handcart within the vehicle.

Melendez and Katana were arrested in a black Dodge Charger in the same parking lot. Inside the Dodge Charger officers found a ski-mask and two cardboard boxes containing glass marijuana smoking pipes (which had been stolen from the intended victim's doorsteps shortly before the arrest when Katana was surveilling the residence). All four defendants were subsequently charged with conspiracy to commit a Hobbs Act robbery.

Johnson was transported to the Massachusetts State Police barracks in Norwell where he was again advised of his Miranda warnings. Johnson signed a form acknowledging that he had received and understood those warnings and he initialed each of the advisements. Johnson told the agents that Walker had picked him up earlier in the day but that he was unaware of where they were going.

4

**Discussion**

The defendant has moved to suppress his statements to the police. The government must prove by a preponderance of the evidence that Johnson knowingly, intelligently, and voluntarily waived his Miranda rights, *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Johnson knowingly, intelligently, and voluntarily waived his Miranda rights each of the two times that he was advised of his rights; once verbally at the scene, and in writing at the state police barracks. In addition to signing the written waiver, he initialed each of the waiver paragraphs.

With respect to Johnson's motion to suppress the search of the motor vehicle, as a passenger he has no standing to challenge that search, *United States v. Campbell*, 741 F.3rd 251, 263 (1st Cir.2013) "We have held squarely that passengers in an automobile who assert no property or possessory interest in a vehicle cannot be said to have the requisite expectation of privacy in the vehicle to permit them to maintain that the search did not meet Fourth Amendment standards." *U.S .v. Symenovich*, 688 F.3rd 12, 19 (1st Cir. 2012).

In addition, the defendant Walker was the driver and the person who had temporary control over the vehicle. Walker gave agents consent to search the vehicle based on the authority that he exercised over it. "A person who possesses actual or apparent authority over property may provide consent to a search of it." *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990); *United States v. Botchway,* 433 F. Supp. 2nd 163 (D.Mass 2006)

In addition to Johnson's lack of standing to contest the search and Walker's consent, there was probable cause for the authorities to search the vehicle under the automobile exception, or pursuant to a lawful arrest. Agents can search a car under the automobile exception where there is probable cause to believe that the vehicle contains contraband or other evidence of criminal activity, *California v. Acevedo*, (500 U.S.565, 580 (1991); *United States v. McCoy*, 977 F. 2nd 706, 710 (1st.Cir. 1992).

Finally, at the time of the stop of the vehicles in the parking lot, the police had ample probable cause to arrest the defendants and thus search them and the interior of the vehicle incident to that arrest. The phone interceptions revealed that Johnson, Melendez, Walker and Katana were planning an armed home invasion. Significantly, Melendez instructed Johnson to bring his gun. Police may search a vehicle incident to a lawful arrest where the agents had

reason to believe that the vehicle contained evidence of the fruits of the crime.  *Arizona v. Gant* 129 S.Ct. 1710 (2009).  Based upon the phone intercepts the agents had reason to believe that the car would contain a gun and other evidence of the anticipated home invasion.

## Conclusion

For the reasons set forth above Mr. Johnson's motion to suppress is denied.


/s/Timothy S. Hillman  
TIMOTHY S. HILLMAN  
U.S. DISTRICT JUDGE